IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD TRACY,                      )
                                    )
                                    )
              Plaintiff,            )     2:20-cv-1960-NR
                                    )
        v.                          )
                                    )
P.N.C. BANK, N.A.,                  )
                                    )
                                    )
              Defendant.            )

## MEMORANDUM ORDER

Plaintiff Richard Tracy brings four claims against Defendant PNC Bank as part of his amended complaint. PNC Bank now moves to dismiss all four claims. After careful consideration, and for the reasons discussed below, the Court will grant in part and deny in part PNC Bank's motion. Specifically, the Court denies the motion as to Counts I and II—these claims may proceed, at least in the manner discussed below. But the Court grants the motion as to Counts III and IV, which are dismissed with prejudice.

## FACTUAL & PROCEDURAL BACKGROUND

Taking the facts in the amended complaint as true, in December 2019, Mr. Tracy sought to purchase a home from a third party. ECF 20, ¶ 22. Unfortunately, the title company suffered a data breach, resulting in Mr. Tracy receiving fraudulent wiring instructions for the transaction. *Id.* at ¶¶ 24, 28. Unaware of the breach, Mr. Tracy instructed PNC Bank, with whom he was a customer, to initiate a wire transfer in the amount of $143,585.59 for the purchase of the property. *Id.* at ¶¶ 25-26; ECF 20-1. Thus, Mr. Tracy unwittingly instructed the wire to a fraudster's account. ECF 20, ¶¶ 25, 29-31.

Mr. Tracy learned of the fraud the next day, and requested that PNC Bank return any recoverable funds and freeze the account *Id.* at ¶¶ 30-33. Over the next

two weeks, he spoke with various individuals at PNC Bank, who informed Mr. Tracy that the bank could recover much of the amount sent in the wire transfer.  *Id.* at ¶ 34.  About ten days after the wire transfer, PNC Bank credited Mr. Tracy's account with $141,763.20, and after Mr. Tracy's inquiry, PNC Bank confirmed this was the amount that it retrieved.  *Id.* at ¶¶ 35-37.  Believing this money had been returned to him, Mr. Tracy closed on the purchase of the property on January 3, 2020.  *Id.* at ¶ 38.

Several days later, PNC Bank posted a "pending withdrawal" of $70,236 in Mr. Tracy's account.  *Id.* at ¶ 39.  Over the next several weeks and months, Mr. Tracy attempted to communicate with PNC Bank about the pending withdrawal, but PNC Bank ignored Mr. Tracy. *Id.* at ¶¶ 51-54.  PNC Bank eventually withdrew $70,200 from Mr. Tracy's account.  *Id.* at ¶ 42.

Mr. Tracy, in his amended complaint,[1] now brings four claims against PNC Bank: breach of contract (Count I), promissory estoppel (Count II), violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count III), and violation of Pennsylvania's Uniform Commercial Code (Count IV).  PNC Bank moves to dismiss all four claims.  ECF 23.  Mr. Tracy filed an opposition brief (ECF 27), and PNC Bank filed a reply brief (ECF 31).  The matter is ready for disposition.

## LEGAL DISCUSSION & ANALYSIS[2]

PNC Bank moves to dismiss each of Mr. Tracy's four claims.  The Court finds that Mr. Tracy adequately pled his breach-of-contract claim (Count I) and

---

[1] The Court previously dismissed Mr. Tracy's original complaint without prejudice. ECF 15.

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The "District Court must accept all of the complaint's well-pleaded facts as true, but may disregard

promissory-estoppel claim (Count II).  However, Mr. Tracy's UTPCPL claim (Count III) and PUCC claim (Count IV) are legally deficient, so the Court will dismiss those two claims with prejudice.  The Court therefore will grant in part, and deny in part, PNC Bank's motion to dismiss.

## I.   Count I states a plausible claim for breach of the duty of good faith and fair dealing.

Mr. Tracy alleges that PNC Bank breached the account-holder and wire-transfer agreements "by failing to provide the security measures and services paid for and relied upon by [Mr. Tracy]." ECF 20, ¶ 48.  He further alleges that PNC Bank breached its duty of good faith and fair dealing, which is implied in every contract. *E.g.*, *id.* at ¶¶ 46, 50; *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 721-22 (Pa. Super. Ct. 1996).  Only the latter states a plausible claim.

The Court agrees with PNC Bank that Mr. Tracy has not adequately pled any breach of the agreements based on PNC Bank's alleged failure to provide certain security measures and services.  But the Court finds that Mr. Tracy has pled sufficient allegations that PNC Bank breached its duty of good faith and fair dealing, so Mr. Tracy may proceed on Count I under that theory.

As to the former, Mr. Tracy has not alleged the agreements' "essential terms," or any terms, that would support his assertion that PNC Bank's security measures, or lack thereof, constitute a breach of contract.  *See Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) ("Three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant

---

any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Any reasonable inferences should be considered in the light most favorable to the plaintiff.  *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).  And the defendant bears the ultimate burden of showing that its motion to dismiss should be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

damages." (cleaned up)). Nor has Mr. Tracy alleged how PNC Bank's security measures fell short of its obligations. Instead, his allegations amount to legal conclusions only. ECF 20, ¶ 48 ("Defendant breached their [sic] account-holder and wire-transfer agreements with Plaintiff by failing to provide the security measures and services paid for and relied upon by Plaintiff."). Because Mr. Tracy has provided no support or factual allegations for his contention that PNC Bank breached an agreement concerning security measures, this aspect of Count I will be dismissed.[3]

But Mr. Tracy has sufficiently pled that PNC Bank breached its duty of good faith and fair dealing. "Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." *Kaplan*, 671 A.2d at 722 (citations omitted). While there is no precise definition of good faith and fair dealing, violations of this duty can include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* (citations omitted); *see also Principal Life Ins. Co. v. Weiss*, No. 09-840, 2009 WL 10687701, at *5 (E.D. Pa. July 30, 2009) ("Although the specific scope of this duty may vary with context, good faith generally entails faithfulness to an agreed common purpose and consistency with the justified expectations of the

---

[3] In his opposition brief, Mr. Tracy argues that he needs discovery to determine "how PNC's security protocols and systems work" before he can provide more specific allegations. ECF 27, p. 4. But Mr. Tracy may not simply plead legal conclusions in the complaint only to go on what is essentially a fishing expedition through discovery. *Zuk v. Eastern Pa. Psychiatric Inst.*, 103 F.3d 294, 299 (3d Cir. 1996) (opining that "discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action"); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (stating that a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element" (cleaned up)).

other party, and the breach of this duty requires a case-by-case inquiry." (cleaned up)).

The basis of the claim arises from Mr. Tracy's and PNC Bank's banking relationship, and thus their account-holder agreement and wire-transfer agreement. As the implied duty of good faith and fair dealing is a context-specific one, the Court concludes that Mr. Tracy sufficiently alleges that PNC Bank breached this duty. According to Mr. Tracy, PNC Bank gave him incorrect information about the wired money being returned to him, and when Mr. Tracy learned of the inaccuracy, PNC Bank ignored him, stonewalled him, and kept information from him. *E.g.*, ECF 20, ¶¶ 14, 50-55. Put differently, PNC Bank assured Mr. Tracy that almost all of the wire transfer had been retrieved and returned to him, and when PNC Bank's information turned out to be incorrect, PNC Bank ignored all of Mr. Tracy's entreaties. *E.g.*, *id.* at ¶¶ 8-15. This states a plausible claim for breach of the duty of good faith and fair dealing.[4]

For these reasons, the Court will deny PNC Bank's motion to dismiss Count I.

## II.   Count II states a plausible promissory-estoppel claim.

In Count II, Mr. Tracy brings a promissory-estoppel claim, in the alternative to Count I's breach-of-contract claim. PNC Bank raises three main arguments to dismiss Count II, none of which prevail at this stage.

First, PNC Bank argues that the promissory-estoppel claim should be dismissed because a contract controls the parties' duties and relationship. ECF 23,

---

[4] PNC Bank emphasizes that the wire-transfer agreement disclaims any liability if PNC Bank cannot cancel or amend a wire transfer after it has begun. ECF 23, pp. 6-7 (citing ECF 20-1, ¶¶ 2, 5). But the aspect of Mr. Tracy's breach-of-contract claim that survives here is not based on PNC Bank's failure to cancel the wire transfer, but rather is directed at PNC Bank's conduct towards Mr. Tracy after the attempted cancellation/retrieval of the wire transfer. So this disclaimer of liability is not relevant here. Moreover, courts have suggested that a party may not waive or disclaim the duty of good faith and fair dealing, and this Court agrees. *See, e.g.*, *Masciantonio v. SWEPI LP*, No. 13-797, 2014 WL 4441214, at *14 (M.D. Pa. Sept. 9,

p. 8.  But a plaintiff may alternatively plead both a breach-of-contract claim and a promissory-estoppel claim—only after the Court definitively determines that a valid and enforceable contract controls (which the Court does not do here at the motion-to-dismiss stage) should the promissory-estoppel claim be dismissed.  *See, e.g.*, *Bonita Properties, LLC v. C & C Marine Maint. Co.*, No. 12-247, 2012 WL 13029506, at *4 (W.D. Pa. Dec. 18, 2012) (Cercone, J.); *Olivia B. ex rel. Bijon B. v. Sankofa Acad. Charter Sch.*, No. 14-867, 2014 WL 7238390, at *6 (E.D. Pa. Dec. 19, 2014); *Iversen Baking Co. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa. 1995).

Second, PNC Bank takes issue with Mr. Tracy not alleging "what PNC allegedly told Plaintiff," nor "who made those vague representations to Plaintiff." ECF 23, p. 8.  To be sure, the amended complaint could use more of those details.  But even without them, there are sufficient allegations to state a plausible claim.  For example, Mr. Tracy adequately alleges that PNC Bank promised and represented to him that it recovered and returned to Mr. Tracy most of the wire transfer.  *E.g.*, ECF 20, ¶¶ 34-37, 64, 66, 68.  The substance of the purported promise is thus clear. Further, Mr. Tracy need not plead the specific names of PNC Bank's agents with whom he conversed.  And PNC Bank provides no authority for such a requirement. Mr. Tracy's allegations constitute a plausible claim.

Third, PNC Bank points to a deed of trust for the property Mr. Tracy purchased—an extrinsic document—to argue that Mr. Tracy could not have relied on any promise PNC Bank made.  ECF 23, pp. 8-9; ECF 23-2.  This deed is dated December 23, 2019, so PNC Bank argues that its promises to Mr. Tracy, which

---

2014); *Walney v. SWEPI LP*, 311 F. Supp. 3d 696, 717, n.12 (W.D. Pa. 2018) (Conti, J.).

occurred after that date, could not have been relied upon by Mr. Tracy in purchasing the property.

The Court disagrees, at least at the motion-to-dismiss stage. To begin with, the Court is not entirely persuaded that the deed of trust can be considered on a motion to dismiss. But even if it could, the deed's relevance or veracity looks to be in dispute. That is, PNC Bank asserts that because the deed is dated December 23, 2019, the purchase of the property must have occurred on that date. But the amended complaint pleads that the closing occurred on January 3, 2020, after PNC Bank's promises. ECF 20, ¶ 38. And PNC Bank's argument seemingly ignores Mr. Tracy's wire transfer going to a fraudulent account. The Court must accept the amended complaint's allegations as true. Dismissal is therefore improper.

For these reasons, the Court will deny PNC Bank's motion to dismiss Count II.

**III.    The Court will dismiss Count III with prejudice because Mr. Tracy did not purchase a relevant service from PNC Bank.**

In Count III, Mr. Tracy alleges that PNC Bank violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). To state a plausible claim, Mr. Tracy must have alleged, among other things, that he "purchase[d] … goods or services" and "thereby" suffered a loss by PNC Bank's deceptive conduct. 73 P.S. § 201-9.2(a). Because Mr. Tracy did not purchase a relevant good or service from PNC Bank, the claim will be dismissed.

When the Court previously dismissed this claim without prejudice, the Court specified that Mr. Tracy's "complaint does not allege with any degree of clarity what was purchased from PNC Bank." ECF 15, p. 2. After filing an amended complaint, Mr. Tracy's pleading still suffers from the same defect. Because Mr. Tracy did not purchase a good or service from PNC Bank, his UTPCPL claim is legally deficient and must be dismissed. *See, e.g.*, *Latuska v. Sethuraman*, No. 15-208, 2016 WL 4082738, at *6 (W.D. Pa. July 29, 2016) (Gibson, J.) ("Because [Plaintiffs] have failed

to allege that they purchased goods or services from, or had any commercial dealings with [Defendant], the Court will grant [the] motion to dismiss[.]" (citations omitted)); *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 725 (M.D. Pa. 2013) (same); *Schwarzwaelder v. Fox*, 895 A.2d 614, 619-20 (Pa. Super. Ct. 2006) ("The Schwarzwaelders purchased nothing from Fox and cannot claim an attendant cause of action under the UTPCPL.").  Further, because Mr. Tracy has been unable to allege any purchase from PNC Bank in any of his complaint's iterations, despite the Court's previous memorandum order, dismissal with prejudice is appropriate as any further amendment would be futile.

The closest that Mr. Tracy could arguably come to pleading purchase of a service is if he had alleged that he paid PNC Bank a fee for the wire transfer as part of his account or wire-transfer agreements.  But even if he had paid such a fee, and had alleged as much,[5] his claim still falls short.  To bring a UTPCPL claim, there must be some unlawful conduct tied to the service that was purchased.  *See* 73 P.S. § 201-9.2(a) (authorizing the cause of action if a "person who purchases . . . goods or services . . . *thereby suffers* any ascertainable loss of money or property, real or personal, *as a result* of the use or employment by any person of a [unlawful] method, act or practice" (emphasis added)).  But there's none alleged here.

Significantly, Mr. Tracy does not allege that PNC Bank engaged in deceptive conduct in initiating the wire transfer; rather, the alleged deception arose from PNC Bank's conduct post-transfer when it was seeking to retrieve the money.  *E.g.*, ECF 20, ¶¶ 77-88.  So even assuming Mr. Tracy paid for PNC Bank to wire the transfer,

---

[5] Mr. Tracy's Account Agreement with PNC Bank refers to the "Consumer Schedule of Service Charges and Fees."  ECF 27, pp. 5-6.  Notably absent from the amended complaint, however, is any allegations of any charges or fees Mr. Tracy paid.  And while the wire-transfer agreement states that a fee "may be assessed" (ECF 20-1, PDF p. 2), Mr. Tracy never alleges that he paid a fee, and so the same pleading defect remains.

the alleged deception and injury arose from a separate, unpaid service—PNC Bank's attempted *retrieval* of the money.  Mr. Tracy did not pay a service fee for PNC Bank to retrieve the transfer.  Indeed, the wire-transfer agreement explicitly stated that the wire-initiation service does not include the "right to cancel or amend" the transfer. ECF 20-1, PDF p. 3.

Thus, while Mr. Tracy's claim is based on PNC Bank's post-transfer conduct, no plausible reading of the amended complaint supports an assertion that Mr. Tracy paid for the post-transfer service or conduct at issue.  Because any payment of service was unrelated to the deceptive conduct, dismissal is appropriate.  *See Duffy v. Lawyers Title Ins. Co.*, 972 F. Supp. 2d 683, 695 (E.D. Pa. 2013) ("Because the fraudulent acts that form the predicate of plaintiffs' claims under the UTPCPL are unrelated to the purchase of title insurance, plaintiffs could not have been damaged through the purchase of title insurance. The scheme perpetrated by the scam artists . . . is the exclusive source of plaintiffs' harm. Plaintiffs failed to show any deceptive conduct by [Defendant] with regard to the issuance of the title insurance[.]").

For these reasons, the Court will grant PNC Bank's motion to dismiss Count III, and dismiss Count III with prejudice.

**IV.    The Court will dismiss Count IV with prejudice because Mr. Tracy authorized the wire transfer.**

In Count IV, Mr. Tracy asserts that PNC Bank violated Pennsylvania's Uniform Commercial Code ("PUCC").  Count IV must be dismissed, however, because Mr. Tracy authorized the wire transfer.

As alleged in the amended complaint, Mr. Tracy authorized the wire transfer that PNC Bank initiated.  *E.g.*, ECF 20, ¶ 77 ("Plaintiff requested an outgoing wire transfer from Defendant on December 23, 2019."); ECF 20-1.  Under Section 4A202(a) of the PUCC, therefore, the wire transfer was an authorized payment order.  *See* 13 Pa. C.S. § 4A202(a) ("A payment order received by the receiving bank is the

authorized order of the person identified as sender if that person authorized the order[.]").  Thus, even though Mr. Tracy unwittingly ordered the wire to a fraudulent account, because Mr. Tracy himself authorized and instructed PNC Bank to initiate the wire, the payment order was authorized.  *See Perlberger L. Assocs., P.C. v. Wells Fargo Bank, N.A.*, 552 F. Supp. 3d 490, 496–97 (E.D. Pa. 2021) ("[Section 4A202] creates protections against unauthorized wire transfers[.] . . . Although [Plaintiff] claims that Defendant should be held liable for failing to detect the fraudulent nature of the transaction, it does not dispute that it authorized the wire transfer at Defendant's branch. For this reason, § 4A202 cannot [underlie Plaintiff's claim].").

Despite authorizing the wire transfer, Mr. Tracy alleges that PNC Bank is liable for violating Sections 4A203 and 4A204 of the PUCC.  ECF 20, ¶¶ 96-100.  But on their face, these sections apply only if the wire transfer was not authorized under Section 4A202(a).  *See* 13 Pa. C.S. §§ 4A203(a) & 4A204(a).  Because Mr. Tracy's wire transfer was authorized under Section 4A202(a), his PUCC claim fails at the outset.[6]

---

[6] For the same reason, Mr. Tracy's reliance on the PUCC's Editors' Notes is misplaced. *See* ECF 20, ¶¶ 99-100.  The Editors' Notes Mr. Tracy cites relate to situations in which the payment order was not authorized by the bank customer, or before the bank receives or initiates an authorized payment order, the order was fraudulently altered by a third party—put simply, the bank "acted on the fraudulent communication by accepting the payment order."  *See* 13 Pa. C.S. § 4A203, Editors' Notes, § 2.  But these situations are inapposite, as PNC Bank acted on Mr. Tracy's instructions alone.  Thus, Mr. Tracy's contention that PNC Bank is liable for the fraud here is incorrect.

Mr. Tracy's assertion that his payment order was cancelled is also incorrect. ECF 20, ¶ 101.  PNC Bank accepted the payment order when it executed the transfer. *See* 13 Pa. C.S. § 4A209(a).  This occurred before Mr. Tracy learned of the fraud and tried to cancel the transfer.  ECF 20, ¶¶ 25-32.  Thus, based on Mr. Tracy's allegations in the amended complaint, the payment order was never cancelled.  *See* 13 Pa. C.S. § 4A211(c).

This claim suffers from fundamental legal defects that further amendment cannot cure.  The Court therefore finds that amendment is futile and will dismiss Count IV with prejudice.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**AND NOW** this **23rd day of June, 2022**, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss (ECF 23).  Counts I and II may proceed as outlined above.  Counts III and IV are dismissed with prejudice.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge